*76 Opinion op the Court,
by Judge Mills.
IN the year 1780, John Philips furnished Peter Sturgis with two hundred and twenty pounds, Virginia *77 currency, for the purpose of procuring for said Philips, a land warrant. This money, which was equal to the price of 600 acres, at the land-office of Virginia, was appropriated by Sturgus to'the payment of so much of the price of his own pre-emption warrant of 1000 acres. For the purpose of settling between them this misappropriation of the money of Philips, the parties entered into the following agreement, which was and delivered by Sturgus: '
cllaacel‘ then to rencter such de^®®a^shou!d r™dere<Hn the first in- and "o' change the prepay and Possossion-
The chancel-tract but°n' in his sound disoretl°n, Ihe^parties^ have ma’deif. tfOrat cannot turned round erre dress. An agreecoveyance of land, containing ambigúsion^con-" strne’d.
*77 “Article ol agreement made and confirmed this 17th July, 1780, between Peter Sturgus of the one part, and John Philips of the other part, both of the county Kentucky, witnesseth : That the above named Peter Sturgus, for and in consideration of the sum of two dred and twenty pounds, current money of Virginia, to me in hand paid, by John Philips, the receipt whereof I do hereby acknowledge myself fully satisfied, for one land warrant containing 600 acres of land, which above named John Philips is lawfully entitled to, by sending two hundred and twenty pounds, money aforesaid, to the land-office, and the said money was laid out for to pay a part towards the above named Sturgus’ preemption warrant; for which money, I do, by these presents, bind myself, my heirs, executors, administrators and assigns, to makegood unto the above named John Philips, his heirs, executors, administrators and assigns, the just and full quantity of three hundred acres of land, a part of my pre-emption, and three hundred acres of treasury rant, except the above said Sturgus can lay the land warrant on land of the equal quality to his pre-emption, then the said Philips is to take the land wheresoever the said Sturgiis lays the warrant, witliin the same distance that this land lays from the falls of OhioP
Sturgus was slain by the Indians in the fall of the year 1781, leaving no child alive; but his wife, then enceint, was delivered of a daughter about three or four months after his death, named Margaret. During the minority of this child, Philips filed his bill on this writing, claiming 300 acres to be conveyed to him out of Sturgus’ pre-emption, and asserting no further claim for any land on treasury warrant, or for compensation for the 300 acres, part of the pre-emption. Pie ed a decree for a conveyance, and here the cause ended. It does not appear that Sturgus had any lands besides his pre-emption, located in his own name, at his *78 death; but he claimed 600 acres of a larger tract, entered on treasury warrant, in the name of Peachy Purdy, as locator, not quite as distant from the falls of the Ohio, as Sturgus’ pre-emption. For this 500 acres, a was fi]ecj an(j a decree for a conveyance obtained hi favor of his infant daughter, in the late quarter session court of Jefferson county; but no conveyance was executed in pursuance of the decree. The daughter Sturgus intermarried with John Lemaster, and died at the close of the year 1798, before she was twenty-one years old, at the birth of her first child, James Lemaswj10 wag jeft as f.jie granc|son ancl sole heir of Peter Sturgus. On the 20th of December, 1799, John Phil-assigned to Worden Pope, without recouse to him, ap the claim which he held by the aforesaid writing, against the heir of Sturgus, for 300 acres of land on treasury warrant. In the year 1800, Pope filed this bill jn the Shelby quarter session court, against the infant grandson of Sturgus, James Lemaster, claiming of him 300 acres more of land on treasury warrant, alleging none but the three hundred acres had been conveyed out of the pre-emption, and that Sturgus left no satisfy the 300 acres of treasury warrant, which he claimed, except the 500 acres for location, which had been decreed to his daughter out of Purdy’s survey, alleged was as near the falls of Ohio as the pre-emption of Sturgus, and answered for the purpose of the contract. He alleged that this 500 acres not (jeen conveyed pursuant to the decree in favor the mother of James Lemaster; and he made Philips and Peachy Purdy, then a widow by the name of Peachy YFilis, defendants, and prayed that she might be comPeHed to convey to him 300 acres out of the 500 acres, instead of Jamés Lemaster, and that the other defend-an(;S should be barred of any claim thereto. Philips answered, admitting his assignment. Peachy Wills answered, admitting the right of Sturgus’ heirs to the 500' acres, and professing a willingness to convey it, to any to w*10tn the court should decree it. James Le-master answered, by his fisher, as guardian, placing the burden of proof on Pope. A few depositions were ta-j-en |-,y- p0pe, which proved that the land contained in Sturgus’ pre-emption, as well as the 500 acres, part of Purdy’s survey on treasury warrant, were both second rate land. In the year 1807, before the termination of *79 this suit, John Lemaster, the father and special guardian of James, died, and his death was suggested on record, and another guardian appointed. In the year 1815, the cause was heard, and Pope obtained a decree that Peachy Wills should convey to him 300 acres out of the 500, taken from the northern part thereof, and that James Lemaster and Philips should be barred of their equity thereto, reserving to James Lemaster twelve months after he thould arrive at full age, to show cause, if any he could, against this decree. A anee by commissioners, in discharge of this decree, accordingiy executed.
Proof of thTwriting was not ten ns intend-with the staleness of the claim, cientto duce the chancellor refuse com-perform the contract.
Purchasers 0f land with notice of a troversy ceiving a veyance nnder a decree neous, arenot such bona fide occupants as them within the occupying claimant must ded according to the principles of eqai of entitled to an account for rents> P™' mago^nd in-done the by Ttion or «£ and the occupant to an alanci valuable improvements Jav^made Up0n the land, to be asse.ssecl ac‘ thei^fondition at the ofassessa^thattime they are deteriorated,their ^sc*°r¿e ingiy.
But the estimate of ia?" to°be?nowed only so far as wiB extincharges for rents, waste, ^0,
If the rent3 waste, &c. exceed Ihe value of owner to íta^the^bal66 anee- but they fall short the occupant alloweda cree for the
*79 Within the twelvemonths allowed to James Lemaster to question this decree by its terms, he came into court and filed his answer, contending that the 300 acres was the most valuable part of the 500, and was far superior in quality to Sturgus’ pre-emption, and, therefore, could not be made use of to fulfill the contract; secondly, that the 500 acres for which his mother had obtained the decree against Peachy Wills, could not come within the meaning of the writing, as that was to be land to be thereafter located for Philips, if he was entitled to any; and lastly, that the writing, by its fair construction, could not entitle Philips or his assignee more than 300 acres of the pre-emption, and that Philips could only claim 600, if located for him on treasury warrant, instead of the three hundred acres of pre-emption land; that Philips had accordingly so treated tire writing by filing his bill for, and obtaining the 300 acres, on which decree he relied as a bar to further claim; and he also urged, that the parties had ever afterwards so understood the instrument. He charged that Pope had conveyed the land to others, whom he made defendants to his answer, as a cross bill, and prayed that they might disclose their title, and how they held possession. These defendants answered, admitting title and possession der Pope, and setting forth their conveyances, and not contesting notice.
On a final hearing, the court below decreed that so much of the former decree as barred James Lemaster of his equity in the 300 acres, should be annulled and set aside ; that the tenants or claimants under should surrender possession and convey the title of the land to Lemaster; ánd that each of the occupants entitled to compensation for their improvements made *80 on the land, under the provisions of the act concerning occupying claimants of land, and that the occupants should account for rents during their occupancy, to be discounted against these improvements. From this decree> each party appealed. James Lemaster assigns as iferror’ that the court erred in allowing any compensation for improvements, and applying thereto the provisions of the occupying claimant laws; and the oppoParfy assigns as error, that the court erred, if Le-master is entitled to the land, in allowing any rents to him against the occupants, and further contests the merits of the decree, in toto, and contends that the court ■erred in disturbing the provisions of the first decree, and that Pope and those claiming under him, are entitled to the land.
We cannot hesitate in saying, that the court below-had a right, in law, to render this decree in favor of the infant, if, by the former decree, his rights wore prejudiced. It is well settled, that in decrees against infants, day ought to be allowed them after they come of age, and the design of this is, that they shall not be prejudiced until that day expires. It then necessarily follows, that if they show that the first decree ought not to have been rendered, the court ought to place the parties in statu qúo, as nearly as can conveniently bé done, but such changes of property and circumstances, as may be necessary to accomplish this object, without too manifest injustice to the opposite party. In other words, the court ought then to render such decree as should have been rendered in the first instance; and if, to do this, it shall be found necessary to change property and possession, it ought generally to be done, although the inconvenience to others may be considerable. This results from the favor shown to infants in a court of equity. They are rightly declared incompetent to act the part of those of mature age; of course, their rights are preserved until their capacity is acknowledged by law. Lemaster has satisfactorily shown that the 500 acres, or rather that part of it which was demarked for Worden Pope, are of superior quality in soil, to the lands of Sturgus’ pre-emption, without regard to adventitious circumstances. Admitting, then, that the contract stipulates to give 300 acres of land on treasury warrant, in addition to 300 acres out of the pre-emption, the inquiry arises as'to the consequence of this proof on the for *81 mer decree. The bill is brought for the purpose of specifically enforcing the contract, not out of a specified tract, but out of lands belonging to the heirs of Sturgus. We need not enquire whether a contract so general in its terms as this, would, or would not, be ever specifically enforced. It barely engages 300 acres of land, equal to such a quality, to be thereafter located; for admitting that the chancellor would enforce it, he never would enforce it upon a subject which would give the party complaining more than he was entitled to, and take from the defendant more than he had stipulated to give, but in such case he would leave the party to'his legal redress. It is clear, that if the land was of a quality inferior to the pre-emption, Philips could not have been compelled to take it, and as it is superior, the heir of Sturgus ought not to be compelled to give it; for the chancellor will not modify the contract, but, in his sound discretion, enforce it, as- the parties have made it. If this cannot be done, the parties are generally turned round to another mode of redress; As the chancellor, in this instance, by the first decree, gave the party complainant more than the contract demanded, his decree was erroneous, and ought to have been rectified. We attach no importance to the circumstance that this claim was located in the name of Purdy; for as Sturgus was entitled to it equitably, we see no reason why it might not have fulfilled his contract, as there was no stipulation in whose name the warrant was to be located.
But as the possession under the former decree is with Pope and his assigns, it is insisted that it -is right to compel Lemaster to do justice, by rendering compensation for the 800 acres, before he recovers it. This involves the construction of the writing, as it is insisted on one side that it stipulates that 300 acres more of treasury warrant land should be given, and on the other, that no more than 300 acres of the pre emption discharged the whole of it. It might, indeed, be supposed reasonable that 300 acres of pre-emption land located, was equal to a warrant of six hundred. But from the face of the writing, we cannot bring it to this; for there is a positive stipulation to give 300 acres of the pre-emption, “and 30Ó acres of treasury warrant.” These' expressions cannot be construed to give only 300 acres of pre-emption or treasury warrant lands, unless we exchange the conjunction and for or, which we are not at *82 liberty to do. We therefore conclude, that both were inten^ed, and refer the subsequent awkward and almost unintelligible expressions, to the place where the land was located and its quality, and not as limiting the stipulation intended. But after the meaning of the writing itself is thus ascertained, it does not conclusively follow, that Philips or his vendees are entitled to compensation for the 300 acres of land. It is true, there is no positive proof that the writing was thus written to include the 300 acres of treasury warrant, as well as the same quantity of pre-emption warrant, by fraud or mistake; but there is proof that the contract between the parties was otherwise, and that by the subscribing witness. In this way, Philips treated the instrument when he filed his first bill thereon and obtained the deci’ee, and never suggested any further claim or demand. It is true, that his ignorance that Stux'gus possessed any other land, and the want of personal estate, is relied on as his apology for this; but he does not make this apology in his bill, or suggest any want of a fund out of which the residue of the claim could be satisfied. This want in the bill, if it does not bar the claim, is, at least, strong presumptive evidence, that it did not exist. Add to this, that nearly, if not entirely, twenty years had elapsed from the date of the wxdting, befoi’e the claim is resuscitated and asserted in the hands of Pope. These circumstances are very persuasive evidence, either that the writing was not written as intended, or that the claim was either satisfied or abandoned, and, we conceive, are sufficient to induce a court of equity to refuse compensation, for the 300 acres of treasury warrant.
The only rexxaaining questions arise out of the account for x’ents, profits and improvements directed to be taken by the court below. We cannot concur with that court, in applying the provisions of the act of 1820. It is true, that act did embrace cases where the parties claim under the same title; still, the bona fide and innocent occupant alone, is to be entitled to the benefits of the act. Such these occupants cannot be. They purchased the lands of Pope pending this suit, before the first decree, by a conditional bargain, subject to the event of his recovering the land. After the decree was rendered, they accepted his conveyance and hold under that decree, subject to and acquainted with its defects and dangers, and the right reserved to Lemaster *83 ío question it. They cannot, therefore, be those occupants described in the act, and their case must be decided according to the principles of equity. Lemaster, we conceive, is entitled to an account for the rents, profits, waste, damage and injury done to the land by improper cultivation or use, and the occupants are entitled to an allowance for such lasting and valuable improvements as they may leave upon the land, to be assessed according to their condition at the time of assessment; that is, if, at that time, they are deteriorated, their price is to be fixed accordingly. But this estimate of improvements is to be allowed so far, and so far only, as will extinguish the counter charges for rents, waste, &c.; and if the rents, waste, &c. herein directed to be charged against the occupants, shall exceed! the value of improvements assessed as we have directedl then the successful party will be entitled to a decree for the residue; but if they fall short of that amount, the occupants are not to be allowed a decree for the excess in their favor. The reason why we thus refuse the occupants the'excess for their improvements, is, they, under Pope’s decree, took possession of this land without the consent of the owner, by applying thereto a contract of his ancestor, which could not apply to i(,. and are, and .then were, acquainted with all the hazards of the title, and must have improved, not innocently believing the land to be their own, but only eventually so, in case Lemaster never asserted his claim. In short, they acquired the land under circumstances which show that they must have expected to run the risk of all the dangers arising from 'the title of Lemaster, and, as it has proved successful, they ought not to be permitted to claim against its owner the value of all improvements which they may have thought proper, under such circumstances, to put upon the land; but only for so much as will extinguish the charges against them.
The decree must, therefore, be reversed and set aside, and the cause be remanded, and such decree and proceedings be had, as will effectuate the opinion of this court, and Lemaster must recover the costs of both appeals,