Ruby, et al, vs. Strother.

RUBY, ET AL, vs. STROTHER.

Where a decree had been rendered against infants, proceedings to set aside such decree by the infants, on coming of age, can only be had on notice to the other parties to the decree.

APPEAL from St. Louis Circuit Court, in Chancery.

*Statement of the Case.*

This was a bill in chancery, filed on the eighth day of March, 1827, by the appellee, an infant by next friend, against Nancy Bates, widow, and Emily, Lucius, Woodville, and Frederick Bates, infant children, heirs of Frederick Bates, deceased, to procure the specific performance of a contract of sale of land alledged to have been made by said Frederick Bates, deceased, with Pierre Chouteau, and the land sold by said Chouteau to the said complainant, here appellee, on which bill a subpoena issued, and was returned as served on the defendants; the return being signed by "James C. Musick, D. Shff., for R. Simpson, Shff."

Nancy Bates answered, denying all knowledge of the matter, and the infant defendants by a

guardian *ad litem,* appointed by the court, put in the common answer. The land was described in the bill as three arpens of land situated near the City of St. Louis, it being the west end of a large tract or parcel of land sold and conveyed by Pierre Chouteau to Frederick Bates. On the seventh day of January, 1829, a decree was rendered, giving another and different description of the land from that given in the bill, and vesting the title thereto in the complainant, and providing that the defendants, infants, might appear within six months after they severally arrived at the age of twenty-one years, and show good cause if they could why the subject matter of that decree might not be re-examined.

Afterwards, on the 13th day of February, 1847, Frederick Bates filed his petition, and the appellants also filed their similar petition, setting forth the filing of said original bill, and the substance thereof, the appointment of guardian *ad litem* for the infant defendants, and his filing an answer, the decree, and the substance thereof, noticing the variation between the description of the land therein and that in the bill—stating the marriage of the defendant, Emily, with Robert A. Walton, the death of the defendant, Woodville Bates, whilst a minor, and that the petitioners were his legal representatives; that the petitioner, Frederick Bates, arrived at the age of twenty-one years within six months before the filing of the petitions; that Emily and Lucius arrived at the age of twenty-one years at periods more than six months before that time; that no subpœna or other process had ever been served on the infant defendants in the aforesaid decree, to show cause against it; that they believed that the said Frederick Bates, deceased, never made any such sale as was charged in the bill; and that said Pierre Chouteau did not enter into and possess said land, as was alleged in the bill; that it did not appear, (but the contrary,) that the alleged sale or agreement to sell was in writing, and signed by the said Frederick Bates, deceased, or by any other person by him thereunto authorized; that the decree was rendered contrary to the statute of frauds; and praying that the decree might be set aside, vacated and annulled, and that the petitioners might be permitted to answer the original bill, and make defence thereto.

Upon which petitions being filed, the court, on the same day, ordered that the decree theretofore rendered be vacated and set aside, and that the petitioners be permitted to answer the original bill of the complainant, and that the cause proceed to hearing anew; and Caroline J. Ruby, Nancy O., jr., John B., and Robert A. Ruby, being infants, the court appointed Barton Bates their guardian, *ad litem,* and answers were filed.

Afterwards, at the April term, 1847, a subsequent term of said circuit court, on the 19th day of April, 1847, the complainant, (appellee,) filed a motion to set aside the order of the court made on the 13th of February, 1847, or if that could not be done then to set it aside as to all the original defendants, except the said Frederick Bates, and to reinstate the original decree as to all except him, because: 1, The complainant had no notice of the petitions filed. 2, The order was made exparte. 3, The infant defendants were given six months after they arrived at the age of twenty-one years in which to apply; whereas, all ot them, except Frederick Bates, had passed that period. 4. None of the petitioners shewed good cause why the matter of the decree should be re-examined. Which motion coming on to be heard on the first day of May, 1847, no evidence was given thereon, but an order was made, reciting that it appeared to the court that the order of the 13th February, 1847, was improvidently made, so far as regarded the said Emily and Lucius, and the representatives of the said Woodville, and that the said decree should not have been set aside except as to the said Frederick Bates, one of the said defendants, but the same was and ought to have been held binding and effectual as to all the defendants, their heirs and assigns, except the said Frederick, and ordering that the said order of the 13th of February, 1847, in this case, vacating said decree, be set aside and annulled as to all the defendants, except as to the said Frederick Bates; and that as to all said other defendants, and all persons claiming under them, the said decree was thereby re-instated, to be and remain of the same force and validity as it was and would have been, if said order of the 13th February had never been made.

To which opinion and decision of the court the defendants excepted, and filed their bill of exceptions; and on the 21st day of June, 1847, prayed an appeal from said order, which was granted them, and which they now prosecute.

*Ruby, et al, vs. Strother.*

BATES, *for Appellants.*

1. The circuit court had no right to reverse, set aside, or alter the decretal order of 13th February, 1847, (which opened the original decree, and allowed the defendants to answer the original bill,) when the same was done, *in a subsequent term*, on the 19th of April, 1847. 1 Mo. R., Hanly vs. Dewes; 10 Mo. R., 686, Harrison vs. State; 1 Ves. jr., 68, 93.

2. According to the usage and practice of courts of equity, the circuit court had no right to reverse, set aside or alter the said order of 13th February, at a subsequent term, *on motion.* If the complainant could object at all before the final hearing, it must have been by petition at least, if not by bill. 13 Ves. jr., Ld. Shipbrook vs. Ld. Hinchingbrooke, 383. The usage of courts of equity is made obligatory by the Statute of 1825, R. C. p. 645, § 42.

3. The circuit court could not annul or set aside the said order of 13th February, in part, and not in whole; and could not re-instate the original decree against some of the defendants, and not against all of them; because the original decree is one and indivisible, and so is the order of 13th February, setting it aside. The complainant claims one entire interest in the land, and the defendants claim the same entire interest by a common title.

In Shipp vs. Miller, 2 Wheaton, 324, under a Kentucky statute allowing three years to infants after they respectively come of age, to make surveys of lands, it was held, that although the time had lapsed as to some of them, yet if any of them were still within the protection of the act, the survey was good for all. And this on principle. And to the same effect is the case of Kennedy vs. Bruice, 2 Bibb, 371.

It is not like the case of a right barred by statute of limitation—that is by mere lapse of time and positive statute law—here the decree is contingent, and can never become absolute but by future action of the court, on the defendant's being called in, by subpœna in the nature of a sci. fa.

But even by the statute of limitations, a joint and indivisible claim would not be barred by lapse of time against some, while others in the same right were still within the act. Observe the reasoning of the court in Perry vs. Jackson, 4 T. R. 516.

4. The order of April 19, 1847, (setting aside the order of Feb. 13, and re-instating the decree as to all the defendants but Frederick,) was a final decision against the appellants. It cut them off once and forever from all power to litigate the matter of the original bill, or question the decree of 1829, which took away their inheritance. It was final as to them, and therefore proper to be appealed from.

5. The order of Feb. 13, 1847, was lawful and right, and was made for good cause shewn, and in allowable time. And first, on the face of it the decree appears to be clearly against the statute of frauds, being a parol agreement only. And payment of the purchase money, and the taking of possession, do not take the case out of the statute, where the contract appears on the face of the bill to be within the statute of frauds, a demurrer will lie. 9 Mo. R. 575, Chambers, et al. vs. Lecompte. And the payment of purchase money, and the taking of possession, do not take a contract out of the operation of the statute. Ib.; and also, 2 Mo. R., 126; Bean, et al. vs. Valle, et al. Moreover, it is the cherished duty of courts of chancery to take care of the rights of infants, by all proper means, whether they pray for those particular means or not. 3 J. C. R. 368, Mills vs. Dennis; 1 Danl. Ch. Pr. 95 & 45. Second. In order to afford this protection, it is well established that a valid decree cannot be based upon an infants common answer. *A day must be given him*, after he comes of age, to shew cause against the decree, *and he must be summoned by subpœna* for that purpose. 3 J. C. R. 368; 4 J. C. R. 301; Bushnel vs. Harford, 1 Desausure 201; 1 Danl. Ch. Pr. 209, and notes. And the omission to insert such a clause in the decree, is itself error. 1 P. Wins. 734, Richmond vs. Taylor; 1 Danl. Ch. Pr. 207, full to the point; 2 Kent's Com. 245, (last part of lecture 31.) Third. Whether the decree had or had not in terms allowed time for the infants to appear after coming of age, was not very material. They might have appeared without such allowance, for by the usage and practice of courts of equity, (made

law by our Statute of 1825, Ch. Pr. § 1,) that right is beyond question. See the citations last above.

The clause in the decree barely allowing the infants to appear and show cause against the decree when they come of age, is not a securing of this right. They are entitled to have *a day given them* in court, and to be reminded of it, and called in by subpœna. Sec 3 & 4 J. C. R. above cited. And this subpœna is precisely like a sci. fa. at law, and designed to have the same effect. The giving of a day to infants to shew cause is not, as the appellee's counsel supposes, in lieu of the parol demurrer at law. And he is mistaken in referring to the practice in N. Y. for that purpose—for the giving of a day to the infants still continuing both in New York and in England, though the parol demurrer has been taken away by statute in both countries. 1 Danl. Ch. Pr. 207, 209–10, in note. Fourth. In this case the appellant's showed good cause in proper time and manner.

1st. It is the same cause which Frederick Bates showed, and it is held good as to him.

2nd. The cause shewn consists in errors on the face of the decree. And such cause can only be shewn by pointing them out to the court; and by argument, if need be; not by affidavit or other extrinsic testimony. Here the cause is shown by formal petition, setting forth the objections which are thus preserved on the record.

3rd. The complainant, so far from being entitled to notice of the petition, was bound to *call us in by subpœna,* before he could pretend to give an absolute character to his contingent decree. The decree being contingent, it was his business to be in court, to watch always until he had made it absolute according to the usage and practice of courts of equity.

4th. The errors on the face of the decree are numerous, and some of them gross and palpable. Besides the statute of frauds already noticed, the decree is obviously defective in not preserving of record the facts on which the decree was founded as required by the law of 1825, R. C. p. 645, § 42. The facts are not preserved at all. The decree professes to recite the substance of the bill, and grossly misstates it in many particulars. It wholly omits the deed exhibit A. of the bill, but refers to the record of a deed not set forth, not identified with exhibit A., nor mentioned in the bill. The description of the land in the decree and the bill are variant from each other. And both are so vague and uncertain, that if not absolutely void for uncertainty, it still remains very uncertain what part of the inheritance of the infants passed to the complainants by the decree. See Shipp vs. Miller, 2 Wheat. 316; Newman vs. Lawless, 6 Mo. R. 279.

5th. In the original suit there was no legal service of process on the infants, now appellants; the return shows that it was done by a deputy sheriff in his own name. And this is not cured by the filing of a common answer by the guardian *ad litem.* That guardian was but the instrument of the court. The record shews that he was appointed without any motion made on behalf of the infants; but on the mere motion of the court.

SPALDING, *for Appellees.*

I. An appeal does not lie except from a final decision; and in this case there is no final decision, but merely an interlocutory or preliminary one, as to who shall be the proper parties in the suit. Rev. Code of 1845, p. 853, sec. 13.

In this respect our practice is different from the English, which allows an appeal from an *interlocutory,* as well as from a final order. See Daniel's Practice, 3 vol. p. 1633–4.

What is the condition of things if the court below has proceeded to a hearing of the case as it exists there, and rendered a decree against the defendants who has answered there?

Is that decree annulled by these reversals of the interlocutory decree below, excluding the defendants appealing now from the benefit of the order opening the original decree?

In a suit at law, an interlocutory order admitting or excluding parties, could not be brought up on writ of error or appeal till final judgment in the cause. Rev. Code, p. 831, sec. 11; and p. 901, sec. 1; p. 888, sec. 1 & 2.

II. The decree was properly restored by the court below, as to all except Frederick Bates, as they did not avail themselves of their rights in time to have the decree opened, &c.; he being the only one of the minors that applied within six months after he came of age and showed cause, &c. The terms of the decree were, that said infants may appear within six months after they severally arrive at the age of twenty-one years, and show good cause if they can, &c.

This contemplates the appearance of each within six months after he or she should arrive at the age of majority; and the appellants being those, or representatives of those, who failed to appear according to the permission of the decree, are bound, and they had no rights to overhaul the decree, except what was reserved in the decree.

39 Law Lib. 248–9, (Mackpherson on Infants, page 387–8,) in the case of Sir John Napier the form of the permission or saving in the decree is, "unless Sir John should within six months after his attaining his age of 21 years, show cause to the Court of Chancery to the contrary;" and it is stated that this is the same order to which, as defendant, he was entitled in the cross suit. Ibid. 263, 272, cases where no time is given to show cause.

1 Daniel's Chancery Practice, 203, sec. 8, "Infants," as to practice in England in entering decrees against infants; 1 Smith's Pr., 537.

The particular form of proceeding in such cases in England is not binding here. Rev. Code of 1825, p. 627, sec. 24. That parol shall not demur, &c. 1 Daniel's Ch'y. Pr., 206-7; R. C. of 1825, p. 612, sec. 7. The form depends upon the practice of the courts in different countries.— Rev. Code of 1825. Appeals in chancery taken in two years, and no exception for infants, who are bound by a general act as much as adults, unless there be an exception. Angell on Limitations, 144.

The infant is as much bound by an absolute decree as an adult,—1 Daniel's Ch'y Pr., 205, and can impeach it on some grounds as an adult, such as fraud, collusion or error.

III. The decree was properly restored; in other words, it never should have been set aside, because there was no *cause shown.* The decree, as entered, gave permission for the infants to appear in six months after coming of age and *and show good cause, if they can, why the subject matter of the decree may not be re-examined.*

The only cause shown were the petitions to set aside, all which were without any accompanying proof, and were not even verified by affidavit. There is nothing to show that Frederick Bates, one of the petitioners, was even of age on 13th February, 1847, when his petition was filed. The matters stated in the petitions or causes, or which may be so claimed to be, are,

1. That no subpoena was served on them. As to this, the answer is already given—no subpoena was required by the decree. The English form embodies in the decree the requirement to serve a subpoena; our practice has not been so. The guardian *ad litem* represented them; and the decree was regular upon bill, answer, replications and process, and the decree had a different effect from the English; it passed title, and our laws did not contemplate such a reservation in favor of the infant, and, in fact, was inconsistent with the practice. Code of 1825, Practice in Chancery; 10 Wheat., 146, 149.

2. A second cause shown is a bare naked denial of the allegations of the bill, to-wit, that there was believed to be no agreement to sell, no receipt of money on the sale, and no possession by Chouteau under the contract to sell.

The objection to this is, that this, if sworn to, would have been no cause such as was contemplated by the decree. The court, in its decree, and in a suit contested, and in which the complainant was put upon his proofs, sets forth that these matters were proved. If, on mere suggestion, the suit is to be tried over again when the infant comes of age, and all that has been done passes for nothing, then the *parol demurs in equity,* most effectually, which is forbidden *at law.*

But a second objection is, that the mere *unsworn assertion* of the infant, as soon as he comes of age, is not to outweigh the solemn adjudication of a court of justice. 39 Law Library, 265; 1 Daniel's Ch'y Prac., 216. That infant wishing to make new defence must apply early. See note 3, that he must swear.

According to the view of infants' rights as set up by the appellants, all that they have to do is,

to say that they want a re-hearing; and then the former trial is a nullity; the decree of the court on the evidence is a nullity; and the whole matter is opened afresh to be again tried, after the lapse of twenty years or more, when the testimony has perhaps all disappeared. 1 Daniel's Ch'y Prac., 221, showing the cause assigned for making further defence and how the cause was established. Ibid, 222.

3. A third cause is, *the statutes of frauds, and that there was no written memorandum of the sale*. But there is an allegation that the sale was made, the purchase money paid, and possession had under the purchase and contract, and this is sufficient. Sugden on Vendors.

4. Moreover, Strother, the complainant, was an *infant*, and it was right to require the infant defendants, at their peril, to appear in six months respectively after they became of age. One infant is as much regarded by the court as another.

IV. The decree was properly restored, because the mode adopted to impeach it was not the proper one. It should have been by bill of review, wherein the parties interested would be made co-defendants, such as assignees, &c. 1 Daniel's Ch. Pr., 205.

In this particular case, the land in question has become a part of the city, and is laid off and owned by sundry individuals under the title through this decree. Common justice would seem to require that they should have had some notice and opportunity to be heard. Strother, it seems, is now a non-resident, and probably cares nothing about the decree, even were he notified. Nor does it appear by suggestion even, that Strother has come of age. Is he, an infant perhaps, to be thus proceeded against, ex-parte, because the defendants are infants?

Here, the decree passed the title at once; in England, it was never so. The setting aside the decree divests title, therefore, and should not be permitted in a summary and informal way.


SCOTT, J., *delivered the opinion of the Court.*

This cause was originally instituted and determined under the act regulating proceedings in chancery, approved 19th February, 1825. That act directed that courts having chancery jurisdiction should proceed according to the rules, usage and practice in courts of equity. By this provision, the Legislature contemplated a resort to the rules and practice of the English courts of chancery, for, as our system of jurisprudence is borrowed from England, when reference is made to chancery practice, it must be presumed that the statute contemplated the system that prevailed in that kingdom. The question, then, arises whether, in those courts, an infant was entitled to a day after his coming of age to show cause against a decree affecting his inheritance rendered against him during his minority. An examination of the authorities, ancient and modern, leave no doubt that such a right existed, and this right has been recognized in many of the American courts. 1 Har. Chan., 425-6-7; Price vs. Carver, 14 Eng. Con. Chan. Rep., 157, part second; Mills vs. Dennis, 3 J. Chan., 367; Pope vs. LeMaster, 5 Lit., 77; Beeler vs. Bullett, 4 Bibb, 11; Wilkinson' adm'r vs. Oliver's rep's, 4 Hen. & Mun., 450; Wilkinson vs. Wilkinson, 1 Desau. 201.

The statute of 1825, which, in some instances, gave the county courts concurrent jurisdiction with the circuit courts in decreeing the specific

performance of contracts for the conveyance of real estate, allowed an infant five years after his disability was removed to appear and file his petition or bill of review to set aside a decree rendered against him in such suits.

An argument was based upon the fact that, as by our law the parol is not allowed to demur in common law proceedings, so an infant is not entitled now to six months after his coming of age to show cause against a decree, because the giving him six months for that purpose was in analogy to allowing the parol to demur in suits affecting his inheritance.— This seems to be the view of the subject taken at first by the English court of chancery, in the case of Powys vs. Mansfield, 9 Con. Eng. Ch., 446, after the rule that the parol shall demur had been abolished by the statutes of 11 Geo., 4, and 4 Will., 4. But in the subsequent case of Price vs. Carver, 14 Con. Eng. Chan. Rep., part second, 160, this doctrine is denied, and a number of cases are cited to show that, in chancery proceedings, a day to show cause against a decree was given to infants in many cases in which the parol would not demur at law. That when the parol demurred in chancery proceedings, nothing was done to affect the infant; but that when a day is given, the decree is complete, but the infant has a day given to show cause against it, and if he does not show good cause within the time allowed, he is bound. If this be so, we do not see the force of the argument drawn from the practice in our courts which by the decree vests the title in the party entitled to it.

In the English practice, a day is given to the infant in this form, viz: "And this decree is to be binding on the defendants, unless, on being served with subpoena, they shall, within six months after they shall attain the age of twenty-one, show unto this court good cause to the contrary." 2 Har. Chan., 442; 14 Con. Eng. Chan., second part, 161, Price vs. Carver. Now, the difficulty in this case grows out of the omission in the decree of a requisition on the complainant to serve the infants with process within six months from their attaining the age of twenty-one years to show cause against it. How is this decree to be construed? Are we to take it literally and compel the infants to take the initiative in setting it aside, or to construe the decree as though it had been entered in due form, and throw the burden of bringing the infants into court on the complainant? If a decree is formally entered and a complainant omits to serve process within the six months on the infant, what is the effect of such neglect? Does the decree thereby become null as to him as the condition has not been complied with, or is he at liberty after that time to come in and show error? There is no warrant in the usage and prac-

*Ruby, et al,* vs. *Strother.*

tice of the courts of chancery in England for giving a literal construction to the decree entered in this cause. It must either be regarded as regular or as a decree giving no time to the infants. In that event, it is not a decree in conformity to the practice of courts of equity, and is therefore erroneous. Kelsall vs. Kelsall, 8 Eng. Con. Chan. Rep., 59. It is held that when an infant conceives himself aggrieved by a decree, he is not under the necessity to stay till he comes of age before he seeks redress, but may apply for that purpose as soon as he thinks fit; neither is he bound to proceed by way of rehearing or bill of review, but may impeach the former decree by an original bill, in which it will be enough for him to say the decree was obtained by fraud and collusion, or that no day was given to him to show cause against it. Richmond vs. Taylor, 1 P. Wms., 736; 2 Har. Chan., 427. The evidence on which this decree is founded is not preserved, as was required by the statute in force when it was pronounced. It is moreover a bill by an infant for a specific performance of a contract to convey real estate, and it is a general principle that an infant cannot sustain a suit for the specific performance of a contract, because the remedy is not mutual. Flight vs. Bollard, 3 Con. Eng. Chan., 675. Whether the circumstances of this case take it out of the operation of the general rule, we will not now determine.

It has been thought incumbent on us to say this much relative to this cause. In considering it, the difficulties above suggested have been encountered, and they have been thrown out that they may be examined by the counsel. We are of opinion that this cause is not before us in a shape in which the points made can be decided. The procedure adopted by the appellants is not an appropriate one. They come in voluntarily by petition to show cause against a decree. The cause shown is a bare statement of facts, unsupported by affidavit, and no notice whatever of this step is given to those who are interested in opposing it. As the parties, appellees, were all out of court, proceedings against them without notice could not be had without violating the first principles of justice. The decree will be, as the proceedings are deemed irregular, that they all be dismissed at the costs of the appellants, the other Judges concurring.